UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT HICKS,<br><br>                Plaintiff,<br><br>v.<br><br>BROWN FAMILY SHOPRITE INC. OF CHELTENHAM.<br><br>                Defendant. | CIVIL ACTION<br><br>No. 08-5830<br><br> |

**MEMORANDUM AND ORDER**

Before the court is the motion of defendant Brown Family Shoprite, Inc. of Cheltenham ("Shoprite") to dismiss plaintiff Robert Hicks's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

**I. Background**

Plaintiff alleges that while he was working at Delilah's Southern Cuisine, located in Shoprite, he was harassed by a security guard named Cleveland. Plaintiff alleges that the harassment led to his resignation from his position at Delilah's.

---

[1]Plaintiff, who is proceeding *pro se*, has not filed a response, but the court will analyze defendant's motion based on the complaint to determine plaintiff's entitlement to relief as a matter of law. *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991).

Plaintiff filed a complaint with the Pennsylvania Human Relations Commission (PHRC) and the U.S. Equal Employment Opportunity Commission (EEOC). The PHRC dismissed the complaint, finding that it lacked jurisdiction in the matter, and the EEOC adopted the findings of the PHRC. On January 6, 2009, plaintiff filed a complaint in this court; he amended his complaint on March 25, 2009.

## II. Discussion

### A. Initial Matters

The court construes plaintiff's complaint liberally in accordance with *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("a *pro se* complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers'") (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). Therefore, the court interprets plaintiff's amended complaint as alleging that he was the victim of sex discrimination in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, et seq., and the Pennsylvania Human Relations Act, 43 Pa. Stat. § 951, et seq ("PHRA"). Since the PHRA has been interpreted and applied identically to Title VII, this court's disposition of the Title VII claims will govern the PHRA claims. *Ward v. Ridley School District*, 940 F. Supp. 810, 811 (E.D. Pa. 1996) (citing *King v. M.R. Brown, Inc.*, 911 F. Supp. 161, 166 n.3 (E.D. Pa. 1995)).

### B. Plaintiff's Employment Status

Defendant Shoprite argues that plaintiff's amended complaint fails to state a claim

because plaintiff was not a Shoprite employee, but rather an independent contractor. Def. Br. at 11. According to the statutory language of Title VII, an employee is defined as "an individual employed by an employer." 42 U.S.C. 2000e(f). This definition is not particularly helpful in differentiating an "employee" from an "independent contractor." See *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 444 (2003) (noting that the definition of "employee" in Title VII is "completely circular and explains nothing"). However, such differentiation is important, because the protections of Title VII, available to employees, are not available to independent contractors. *EEOC v. Zippo Manufacturing Co.*, 713 F.2d 32, 35 (3d Cir. 1983); *Kumar v. Temple Univ. Cancer Ctr.*, No. 95-7832, 1997 WL 563391 at *6 (E.D. Pa. Aug. 29, 1997) ("the protection of Title VII extends only to those who are 'employees' and does not extend to 'independent contractors'").

The court evaluates whether a plaintiff had an employment relationship with a putative employer based on the latter's right (or lack thereof) to control plaintiff's employment.[2] *See Clackamas*, 538 U.S. at 448 (considering whether physicians who were shareholders of defendant corporation were employees for purposes of the

---

[2] The Third Circuit formerly evaluated independent contractor status according to a hybrid of the "right to control" and "economic realities" tests. *EEOC v. Zippo Manufacturing Co.*, 713 F.2d at 38 (analyzing issue for claims under ADEA). However, recently the Supreme Court clarified that the common-law "right to control" test–and not the hybrid test–should be followed for determining employment status for Title VII purposes. *See Clackamas*, 538 U.S. at 448 ("[T]he common-law element of control is the principal guidepost that should be followed.").

Americans with Disabilities Act); *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323-24 (1992) (using "control" test to determine whether insurance salesman was an independent contractor or an employee for purposes of the Employee Retirement Income Security Act). To determine which category applies to a plaintiff–either employee or independent contractor–a court should:

> consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

503 U.S. at 323-24.[3]

The Third Circuit has used this "control" test in the shareholder context. *Ziegler v. Anesthesia Assocs.*, 74 F. App'x. 197, 201 (3d Cir. 2003) (affirming the district court's finding that professional shareholders were not employees). Other courts within the Third Circuit have used this test to consider broader questions of employee status for purposes of Title VII. *See Kemmler v. Tri-State Health Investors, LLC*, Nos. 05-361 and 06-13, 2008 WL 3982467 at *2 (W.D. Pa. Aug. 22, 2008) (considering whether

---

[3] Although the facts in *Clackamas* pertained to the ADA, the Supreme Court noted that its decision to apply the "right to control" test extended to other statutes, including Title VII. *See* 538 U.S. at 444 n.3 ("The disagreement in the Circuits is not confined to the particulars of the ADA.")

applicants for nursing positions could be considered employees for Title VII purposes); see also *Cameron v. Infoconsulting Intern., LLC*, No. 04-4365, 2006 WL 1450842 at *5 (E.D. Pa. May 23, 2006) (looking to details in the plaintiff's employment contract to determine which of potential employers exercised the "control" as described in *Darden*).

This court uses the "control" test to analyze plaintiff's claim against Shoprite. Although defendant's motion stresses plaintiff's statement in his amended complaint that "I do not work for Shoprite [nor] am I employed by them in any [ ] way. . . ," this statement is not dispositive as to how much control Shoprite exercised over plaintiff's employment. Central to the analysis is whether there exists any possibility of an employment relationship between plaintiff and Shoprite. *See Graves v. Lowery*, 117 F.3d 723, 729 (3d Cir. 1997).

In the present case, the court cannot say that Shoprite exercised no control over the plaintiff. No "careful factual inquiry" has yet taken place. *Id.*; *cf. Rodriguez v. Lauren*, 77 F. Supp. 2d 643, 647-48 (E.D. Pa. 1999) (analyzing evidence relating to security guard's employment status, including how guard was hired, who assigned projects to guard, how guard was paid, and who withdrew payroll taxes from guard's pay, in order to determine whether retail store that guard was assigned to could be considered guard's employer). Viewing the available facts in the light most favorable to the plaintiff, it is possible that Shoprite exercised enough control over the means and manner of plaintiff's employment with Delilah's to qualify as plaintiff's employer. For example, the complaint

filed with the EEOC states that plaintiff was hired by Delilah's, but generally "[took] direction from" Shoprite manager Joe Hult. Additionally, plaintiff alleges that he reported the sexual harassment to a Shoprite manager with the expectation that Shoprite was in a position to respond. The court "decline[s] to speculate . . . whether [plaintiff] will ultimately succeed in [his] claim" but finds that the employment relationship between Hicks and Shoprite is "sufficiently ambiguous" for plaintiff to proceed to discovery. *See Graves*, 117 F.3d at 729.

### III. Conclusion

In the accompanying order, defendant's motion to dismiss is denied.